MIDDLETON MOORE *v.* S. S. KNIGHT *et al.*

AND

SAMUEL B. SEAT, Ex'r, *v.* S. S. KNIGHT *et al.*

1. VENDOR AND VENDEE. *Rents. Receiver.* When vendor who has sold lands by title bond, seeks to appropriate the rents and profits of the land sold to payment of debt for purchase money, he must either allege in his bill, or make it appear during pendency of the suit, either by petition, supported by affidavit or otherwise, that the land itself is insufficient to pay his debt—the land being the primary fund for its satisfaction, the rents but incidental.

2. SAME. *Chancery pleadings and practice.* After the proceeding has gone on to decree, such vendor cannot file an independent bill to reach rents and profits of the land. It is held, these must be impounded and appropriated in the original suit to enforce the lien, as incident to enforcement of the lien, and cannot properly be made the subject of an independent suit.

Moore v. Knight.

3. REALTY BELONGING TO MINORS. *Administrator taking rents.* *Guardian by intrusion.* When an administrator takes the rents of lands descended to minors, he will, be treated as a guardian by intrusion.

4. MINORS. *Pleading and practice.* *Evidence.* The rights of a minor disclosed by the evidence, will be protected without regard to the pleadings, but there must be pertinent pleading to prejudice the rights of minors.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

GAUT, OSMENT & GAUT for complainants.

R. L. MORRIS and J. TRIMBLE for defendants.

FREEMAN, J., delivered the opinion of the court.

We may gather from the record before us, by the allegations of the bill of complainant Seat, executor, and the decree of this court tendered in support of it, that in 1852, James and George Anderson bargained and sold to Joseph B. Moore, a large tract of land in Davidson county, containing about 920 acres. The price was $15,000, for which four notes are stated to have been given, due at one, two, three and four years. That a title bond was given to Moore, binding the parties to make a warranty deed when the notes were paid. Under this contract Moore took possession of the land, and remained in possession from the date of said purchase to his death, on the 12th of September, 1864. S. S. Knight, one of the respondents in this case, is the administrator *de bonis non* of Moore,

Middleton Moore having been first appointed and removed.

It is stated in the bill of Seat, in the present case, that in November, 1866, a bill was filed by himself, as the representative of one of the Andersons, at any rate, of the vendor against the administrator and heirs of Moore, seeking to enforce the vendor's lien on balance remaining due of the purchase money.

After much litigation, a decree was had in the chancery court in favor of the respondents in that case, but which, on appeal to this court, was reversed and decree entered 15th of February, 1875.

By the decrees made in that case, as they appear in evidence in this record, the complainant executor, representing Anderson, was declared to have a vendor's lien on the land sold to Moore, for the balance of purchase money due, considerable sums having been paid on the debt. An order of reference was made for an instanter report of the amount thus due. It was also adjudged that the complainant had the right to have the land purchased, or so much thereof as may be necessary, sold to pay the said balance, when ascertained. On the 10th of April, 1875, the clerk and master of this court made his report of the amount due, which being unexcepted to, was confirmed.

This balance was shown to be then $13,418.43, and having been adjudged a lien on the land, giving the boundaries, this vendor's lien was ordered to be enforced by sale of the same, or so much thereof as should be necessary to satisfy the above sum shown by report of the master. But in this decree ordering

the sale, it is recited "that it is suggested by complainant's solicitor, that Moore had in his lifetime sold a portion of said land to one Labon Abernathy, and that only about seven hundred acres remain after this sale." It was then ordered, that the "clerk shall only sell the remaining portion of said tract not embraced in said sale to Abernathy, unless requested by complainant's counsel, or upon the further order of this court."

On the 1st day of October the clerk filed his report, and January 27, 1876, he filed a supplemental report, showing certain advance bids on various lots of the land which had been so divided by the clerk, and on this the biddings were opened, and alternately reported to the court and confirmed to the purchasers at said bids. After ascertaining the taxes due and directing their payment, then deeds were directed to be made to the purchasers on payment of their notes. The balance due was ascertained as upwards of $5,000, and so the case, as far as we can see from this record, has ended.

We see from this evidence thus tendered by the complainant in this case, that from his own showing he has had a lien declared on the entire tract of nine hundred and twenty acres, and a decree to sell the entire tract, but that he has only sold seven hundred acres, leaving two hundred and twenty acres yet unsold, bought by Abernathy from Moore in his lifetime, that is, before 1864—at what time is not shown.

In the original bill filed in this case (called an original bill in the nature of a cross bill, which,

however, is only an original bill permitted to be filed in another proceeding), it is distinctly shown that only the seven hundred acres had been sold. It is further charged in that bill, that Moore had sold to Abernathy without authority of law, and in violation of the rights of complainant, and claims that the purchaser from Moore has no title as against complainant's lien. As we have seen, this is in accord with the theory of his decree in this court, recited above.

It is necessary to state briefly the precise nature of the case now before us. In June, 1865, Middleton Moore, one of the heirs of Joseph B. Moore, the original purchaser of the land, filed a bill in the chancery court of Davidson county against S. S. Knight, administrator *de bonis non* of said Moore, together with the other heirs of said Moore, as defendants. This bill seems to have these objects: First. To have an account and settlement of the matter of Knight's administration and appropriation of the assets received, or that should have been received by him, to the payment of the debts due from Moore—of which a few are suggested to exist. Second. To have a sale of the land, that proceeds may be distributed, and then to call the administrator to an account for rents alleged to have been wrongfully received by him, by improper intrusion upon the estate of the heirs and then receiving the same.

We may say, there is nothing in the suggestion of the bill, that it was a bill to sell the land for the payment of creditors of the estate, as it contains no allegation of the exhaustion of the personal assets in

the payment of debt, leaving others unpaid. This would certainly be necessary as against the present appellants, as they are the minor heirs of said Moore. On the contrary, it is charged that the inventory of sales shows near $1,200 of personal assets that might have been appropriated to any debts of the intestate. Certain it is, the draftsman of this bill had no thought of complainant's debt; and if it was known, it was ignored by him.

On the charges of this bill of Moore's, a receiver was prayed for to take charge of the land, and rent it out under the direction of the court, and also to receive from Knight, the administrator, any and all rents already received by him.

In answer to this bill, filed September, 1869, Knight admits that he had taken charge of the lands, except the portion assigned to the widow as dower, and had rented them out from year to year. The facts, as stated by him, are, that there was no guardian for any of the minor heirs, and no other person (if he did not do it) to rent out and take charge of the land, and under these circumstances he insists it was not wrong for him to do so. He then says, he is ready to account for all the rents thus received, and proposes to render a statement of these rents whenever called on.

Under these proceedings rents had accumulated in the hands of the receiver, and we believe a good portion of what had been collected by Knight was paid into court, and thus held for the parties as they might be entitled. Funds thus paid in were recog-

nized as belonging to these minors, as at April term, 1871, a decree is made adjudging that there was of the rents to the credit of these minors the sum of $533.20, and the clerk was ordered to loan this money, as these minors' money, giving preference to the guardian of the minors. This suit seems, by an arbitrary order of the chancellor, to have been turned into an insolvent administration in his court. We say arbitrarily, for there is no bill filed anywhere, as we can see, for this purpose. It probably proceeded loosely in this form, as we find one debt filed against the estate for funeral expenses; but nothing more done, as far as this record shows, except to collect rents by the receiver, pay out the money in the way of attorney's fees, and loan other portions of it.

Thus matters stood, till April 12, 1875, after the decree of this court had been passed declaring complainant entitled to his vendor's lien, when he brings the present bill, files it by permission in the case of Middleton Moore against Knight, the administrator, and the other heirs of Moore, and seeks by attachment to have all rents, both those accruing before and in future, applied to the payment of what of his decree remained unpaid. In this bill he shows, as we have stated, however, he has only gone on the seven hundred acres; and as a basis for his claim on the rents thus sought to be subjected, he does not even allege that the whole tract would not pay his debt, but says the *seven* hundred acres, he is informed and believes, will not pay his debt, interest and costs. The whole case is put simply on the fact of his ven-

dor's lien, and this allegation of insufficiency of part of the land to pay his debt, while, as we have seen, he proves by the decrees filed, he still has two hundred and twenty acres of the land untouched.

From all these facts we assume that from complainant's case as made by himself, that he had filed his original bill, as vendor, against the entire tract of land, and has a decree for its sale—at his option the sale of the two hundred and twenty acres mentioned. It is clear, too, and is the only inference to be drawn from the facts, that complainant considered the whole tract as ample security for his purchase money, as on his own theory of the law, he would certainly have impounded the rents in the original proceeding—making the proper allegation for that purpose—if such right exists, showing that the *corpus* of the land was iusufficient to discharge his debt, and the rents were necessary for such purpose. From the failure to do this, as well as the price brought by what land had been sold, we must assume the whole tract was thought to be sufficient for this purpose, if sold and applied. The fact that complainant has carefully confined himself in this bill to the statement that the seven hundred acres were insufficient, makes it conclusive upon him, in connection with all the facts we have stated, that such was the case. If not, he would have charged the fact to be that the whole land was insufficient.

Taking this to be the true state of the case, the real question, precedent to all others, is, conceding the right of the vendor by the title bond, on proper al-

Moore v. Knight.

legations of insufficiency of the *corpus* of the land, in his bill to enforce the vendor's lien, to have the rents also impounded and appropriated in aid of the land, can such a vendor, without having done this, with a portion of the land remaining unsold, on allegation simply that a part of it is insufficient, file an independent bill and attack and appropriate the rents that have been accumulated for the benefit of the heirs, or that may accrue, and yet leave his original security unexhausted? We hold, on the facts stated, he has no such right, and no such bill can be maintained.

It is proper, before going into a discussion of this question, to say, that the chancellor decreed in favor of complainant, appropriating the rents to this debt, and the minor heirs of Moore have alone appealed to this court. They, as such, having submitted their rights to the protection of the court, are entitled to have a case made out against them, before their moneys can be decreed from them.

We think it certain, both on principle and authority, even in case of a mortgage, that on an application for a receiver to take charge of the lands, and then appropriate the rents, it must be made to appear, either in the bill filed to foreclose, or by affidavit accompanying a subsequent application for such receiver during the progress of the suit, whether this application be made by the first mortgagee, or by and in connection with a subsequent incumbrancer, that the mortgaged premises were insufficient to pay the debts charged upon it. Such was the practice pursued by that great lawyer, the late Francis B. Fogg, in the

case of *Hernshaw* v. *Wells*, 9 Hum., 577. This, too, we understand to be the theory of the court in that opinion, when it is said, a prayer for receiver is not necessary to get a receiver appointed, if the *facts* stated authorize the appointment of one. The necessity for the appointment of one frequently occurs after the bill has been filed, so that it could not have been part of the prayer, that the court will, nevertheless, make the order without requiring the bill to be amended, or a supplemental bill filed: See pp. 582–4, *Ibid.*, Coop. ed. Yet it is implied, and in fact necessarily assumed, the facts, rendering such appointment necessary, shall be made to appear in some authentic form, before the action of the court can be invoked. Such is the doctrine and practice of the court, as laid down by Judge Story, vol. 2, secs. 836—839. The right of the party, in other words, must be clearly shown to be implied, or the *corpus* of the security insufficient, before a receiver will be appointed in order to protect them.

Now, if some grounds showing an equitable right to appropriate the rents, is proper to be shown before the mortgagee could ask the action of the court to impound them, where he had not sought to do so by his bill for foreclosure, much more should such a case be shown in the case of a vendor. Certainly he repels himself from this right when he definitely shows a case, or leaves a fair inference of such a case, where no necessity for going on the rents is made out, but *prima facie* the contrary. We may add, there is no testimony tending to explain the facts we have given,

and the case stands in this record on the facts we have given.

We have said the case is much stronger in favor of the vendee put in possession under his purchase, than in the case of a mortgagee; for while there are numerous points of similarity between the case of a mortgagee and a vendee, yet there are also several essential points of difference. We note a few of the points of dissimilarity, as they serve to make clearer the grounds on which we have placed this decision.

The vendee is not a tenant at will of the vendor—in fact, is no tenant at all. As in the case of a mortgager holding possession, after the mortgage is executed, he owes no rent to the vendor. He holds, as held by this court in several cases, for himself and adverse to the vendor. So that if he continues in possession for seven years, this gives him a possessory right that may be set up against his vendor seeking to obtain possession of the land, armed with the legal title. So it was held in *Ray* v. *Goodman*, 1 Sneed, 588—a case never overruled on this point, but approved in *Gudger* v. *Barnes*, 4 Heis., 576-7, as well as since in other cases. The case was disapproved of and overruled in the above case, so far as it is held that the bill of the vendor to enforce his lien for unpaid purchase money was a suit for the possession of the land, or that the adverse holding was against this right. In this we have never doubted the conclusion then reached. Both parties were claiming their rights precisely according to the terms of their contract, as understood by themselves—the one

to occupy the land for himself, the other to hold the legal title as security for the payment of his purchase money.

The possession of the vendee, *per se,* is not adverse to this right; and so it has been held, that even a purchaser by verbal contract is not a tenant in such sense as to estop him from denying the title or right of his vendor, and if permitted to hold adversely or under the contract for seven years, will get the benefit of the statutes of limitation in favor of his possessory right: 1 Swan, 310; 10 Hum., 220. The truth is, that the relations of the parties are simply that of vendor and vendee—the former retaining the legal title to secure the payment of his debt, the latter entitled to occupancy and enjoy possession of the land for himself by the fairly understood terms of the contract. Such is the meaning and understanding of the parties themselves, and to make any other meaning to the contract, by construction of law, is not to carry out the contract made by the parties, but to make one for them.

The true ground on which to rest the rights of the vendor are, that he has primarily the security of the land for the payment of his debt. If this is not sufficient, after failure of payment by the vendee, and it is shown, either by allegation in the original bill, or during the litigation to enforce the lien, by petition or application to the court, verified by affidavit, that probably the primary security is insufficient, then when he has retained the legal title, he may have a receiver appointed and appropriate the rents to the

payment of his debt as an incidental part of his se--
curity.   But he should be required to enforce this
incident in connection with the principal right to which
it attaches, and not by an independent proceeding,
thus making two suits where only one is necessary.
Even in a case of a mortgage, it is settled that the
*corpus* of the property is the primary fund, out of
which satisfaction is to be sought, and not its rents
and profits, when the mortgagee is out of possession :
*Whitmore* v. *Parks and Jackson,* 3 Hum., 94.

We therefore conclude complainant has not only
shown no right to reach the rents impounded in this
case, but by the facts shown, has repelled himself
from the relief sought by him.   We would probably
reach the same conclusion on another view of the case,
that is, that the rents in the hands of the adminis-
trator were received by him as the agent of these
minors, and he would be treated as guardian by in-
trusion on the estate of his wards, and so they had
passed to the proper possession of the parties for whom
they were held, certainly so as to these minors.

We do not discuss the case of *Morford* v. *Hamner
et al.,* 3 Baxt., 391, where a receiver was refused, and the
principle announced, that a vendor had no right to
appropriate the rents to his debt.   It is said in ar-
gument, and the chancellor so assumed, that case was
an implied · lien, or one by contract where there had
been a conveyance of the legal title retaining it.   It
may have been so, but the report does not show it.
If it was as stated, it is not in conflict with anything
said in the argument in this opinion.   We have simply

held in this case, that assuming the right of the vendor to be as claimed, after default in payment of the purchase money to have a receiver of the rents and appropriate them to the payment of his debt, that this right, by the nature of the contract, is one merely incidental and secondary to the appropriation of the *corpus* of the property sold by him; and when he shows he has not exhausted that *corpus,* and predicates his right to appropriate the rents on the mere assumption that a portion of the *corpus* is insufficient to pay his debt, he fails to make out a case for relief.

For these reasons, the decree of the chancellor will be reversed and complainant's bill dismissed with costs of this and court below, so far as the appellants are concerned.


A petition for rehearing is presented in this case. We have carefully examined it, and find nothing in the slightest degree affecting the conclusions reached in the former opinions. It is suggested in general terms in the bill that the land did not pay the whole debt, on information and belief, but when the complainant comes to specify definitely the facts by way of charge, he specifies the seven hundred acres as this land. He shows by the documentary evidence, he has sold the seven hundred acres, but that the two hundred and twenty acres remain unsold. We held the *corpus* of the land was the primary fund for satisfaction of the lien, and the rents only incidental,

after failure of vendee to pay. That the vendee and heirs having been permitted to remain in possession, could not be charged with the rents, nor could they be appropriated to the payment of the purchase money, until the *corpus* was exhausted, or a necessity for the application clearly shown. Such necessity is not shown in this case, either by clear allegation or proof. On the contrary, while the two hundred and twenty acres remain unsold, from the fact that complainant did not seek to impound the rents during the pendency of the original suit, the inference is fair, that the whole land was deemed sufficient, especially when taken in connection with the allegation that the seven hundred acres would not be sufficient.

We think it equally clear, that one suit to enforce a vendor's lien in a court of chancery is all that can be permitted, and a party cannot be permitted to file two bills for this purpose—one against the lands, and a subsequent one against the rents accrued to the vendee in possession, or his heirs after his death. These parties are charged in the bill to have remained in possession up to the time of filing last bill. The appellants in this case being minors, are entitled to all defenses that arise on the facts shown in the record.

There is no proof whatever in support of the necessity for appropriation of rents; on the contrary, the fact stands out and proven, that two hundred and twenty acres of complainant's security is unsold, with a decree in his favor to sell not executed. This would be conclusive of the case, even conceding it

has been charged that the land was not sufficient; the charges against minors, situated as in this case, must be proven.

The theory of the opinion is, that the vendee, by his contract, is entitled to the possession and profits of the land, and can only be deprived of these, under the bill to enforce the vendor's lien, upon allegation in said bill of insufficiency of the land, definitely made, supported by affidavit, on which a receiver may be appointed, or by application *pendente lite,* supported by such affidavit, on petition or otherwise. The fact. that the parties consented that the receiver then acting under the former bill, should act as receiver in the present case, can have no influence on the rights of any one, but certainly cannot bind the minors. They can make no admissions of their detriment.

We are well satisfied with the correctness of the conclusion reached, and dismiss the petition.